UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLENS FALLS INSURANCE COMPANY
a/s/o HAROLD and LAUREN HEINZ,      :      CIVIL CASE NO. 303 CV 1015 (DJS)

      Plaintiff,             :

V.

                                :

COMMAND FORCE SECURITY
SYSTEMS, INC.

      Defendants           :      August 27, 2004

## AFFIDAVIT OF CAROL S. DOTY

STATE OF NEW YORK   )
                     )ss.:
COUNTY OF NEW YORK )

      CAROL S. DOTY, being duly sworn, deposes and says:

      1.     I am an associate of the firm of Kaufman, Borgeest & Ryan LLP, attorneys for

the Defendant, Command Force Security Systems, Inc., and submit this affidavit in support of

Defendant's Motion to Preclude a portion of plaintiff's expert's testimony.[1] As more fully set

forth in the Memorandum of Law, plaintiff's expert's second report does not comply with FRE

Rule 702, 28 U.S.C.A., and should be inadmissible as a matter of law.

---

[1] We respectfully request that the Court first decide this Motion to Preclude a portion of plaintiff's expert's testimony, which is being filed simultaneously with defendant's Motion for Summary Judgment, before deciding the Motion for Summary Judgment.  As the Exhibits are almost the same for both motions, in the interest of judicial economy, we have attached all of the exhibits for this Motion to Preclude, to defendant's Motion for Summary Judgment, and have referenced such in this Affidavit.

*ORAL ARGUMENT IS REQUESTED

2.      A true and correct copy of the Complaint is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "A".

3.      A true and correct copy of defendant's Notice of Removal is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "B".

4.      A true and correct copy of the defendant's Answer is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "C".

5.      A true and correct copy of excerpts of plaintiff's Rule 26(a) Disclosure is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "D".

6.      A true and correct copy of plaintiff's Responses to Defendant's Requests for Production and Interrogatories is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "E".

7.      A true and correct copy of plaintiff's Expert Witness Disclosure is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "F".

8.      A true and correct copy of plaintiff's expert's first investigational report (Report "1") is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "G".

9.      A true and correct copy of plaintiff's expert's second investigational report (Report "2") is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "H".

10.     A true and correct copy of plaintiff's expert's first deposition transcript, dated March 16, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "I".

11.    A true and correct copy of plaintiff's expert's second deposition transcript, dated May 6, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "J".

12.    A true and correct copy of Harold Heinz's deposition transcript, dated January 29, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "K".

13.    A true and correct copy of Jake Mollenkopf's deposition transcript, dated January 7, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "L".

14.    A true and correct copy of Matthew Matza's deposition transcript, dated February 9, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "M".

15.    A true and correct copy of defendant's expert's deposition transcript, dated June 10, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "N".

16.    A true and correct copy of excerpts of plaintiff's expert's file, minimized in size to fit on an 8 x 11 inch page, attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "O".

17.    A true and correct copy of defendant's expert's report, dated January 27, 2004 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "P".

18.    A true and correct copy of the Subscriber Activity Report, dated July 23, 2001 is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "Q".

19.    A true and correct copy of defendant's Expert Witness Disclosure is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "R".

20.    A true and correct copy of defendant's Response to Plaintiff's Interrogatories is attached to defendant's Motion for Summary Judgment, dated August 27, 2004 as Exhibit "S".

Dated: New York, New York
      August 27, 2004

                                        Carol S. Doty    CT24974

Sworn to before me this 27th
day of August, 2004

NOTARY PUBLIC

MICHAEL R. JANES
Notary Public, State of New York
No. 02JA6056830
Qualified in Queens County
Commissions Expires 4/02/2007

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLENS FALLS INSURANCE COMPANY
a/s/o HAROLD and LAUREN HEINZ,　　　　:　　　　CIVIL CASE NO. 303 CV 1015 (DJS)

　　　　Plaintiff,　　　　　　　　　　:

V.
　　　　　　　　　　　　　　　　　　:
COMMAND FORCE SECURITY
SYSTEMS, INC.

　　　　　　Defendants　　　　　　　:　　　　August 27, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE TESTIMONY PURSUANT TO FRE RULE 702

KAUFMAN BORGEEST & RYAN LLP
Attorneys for Defendant
COMMAND FORCE SECURITY
SYSTEMS, INC.
99 Park Avenue, 19th Floor
New York, New York 10016
(212) 980-9600

Of Counsel:

Carol S. Doty, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENTS............................................................................................................6

      POINT I      PLAINTIFF'S EXPERT'S
                     SECOND REPORT IS TOTALLY
                     UNRELIABLE AND SHOULD BE
                     PRECLUDED AS A MATTER OF LAW ...................................................6

                     A     Report "2" was not based on research
                           conducted independently of this litigation
                           and should therefore be inadmissible as
                           evidence. ................................................................................7

                     B.    The conclusions of Report "2" were not
                           generated by a reliable methodology,
                           therefore, Report "2" must be held inadmissible .................................9

                     C.    Mr. Klem agrees with the findings in Report "1".
                           As Report "1" does not agree with Report "2",
                           Report "2" is unreliable and should be precluded.............................14

CONCLUSION............................................................................................................16

CERTIFICATE OF SERVICE ...................................................................................17

# TABLE OF AUTHORITIES

**Page**

1.   Amorgianos v. Nat'l R.R. Passenger Corp., et al.,
     137 F.Supp.2d 147 (E.D.N.Y. 2001) ..............................................................9, 14

2.   Amorgianos v. Nat'l R.R. Passenger Corp., et al.,
     303 F.3d 256 (2d Cir. 2002)...................................................................7, 11, 16

3.   Boucher v. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) ......................11

4.   Daubert v. Merrell Dow Pharm., Inc.,
     509 U.S. 579,113 S.Ct. 2786 (1993)................................................................6, 9

5.   Daubert v. Merrell Dow Pharm, Inc.,
     43 F.3d 1311 (9th Cir. 1995) ..........................................................................8, 9

6.   Heller v. Shaw Indus., Inc., 167 F.3d 146 (3d Cir. 1999) ..............................9,15

7.   In re Raoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994)................15

8.   Perkins v. Origin Medsystems, Inc., 299 F.Supp.2d 45 (D.Conn.2004) .................7. 11,13

9.   State v. Porter., 241 Conn. 57, 698 A.2d 739 (1997), cert. denied. 523 U.S. 1058, 118
     S.Ct. 1384, 140 L.Ed.2d 645  (1998)..........................................................7, 11

## STATUTES

1.   Federal Rule of Evidence, Rule 702 28 U.S.C.A............................................ 6,7,8, 12 & 16

## **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in support of the within Motion on behalf of the defendant, Command Force Security Systems, Inc, which seeks an Order granting this Motion to Preclude a portion of plaintiff's expert witness testimony.

This is a subrogation action, brought by plaintiff, Glens Falls Insurance Company (a Delaware Corporation), as a subrogee of Harold and Lauren Heinz, for monetary damages, which were incurred after a fire at their home on July 23, 2001. (Exhibit A). This action was originally venued in Superior Court, Stamford, Connecticut and was commenced by service of a Summons and Complaint dated May 6, 2003, upon the defendant, Command Force Security Systems, Inc., a company with a principal place of business in the State of New York. (Exhibit A).   Thereafter, on June 5, 2003, this matter was removed to the U.S. District Court for the Connecticut District, on the basis of complete diversity of citizenship. (Exhibit B).

The plaintiff alleges that the alarm system installed in the home by defendant Command Force Security Systems, Inc, was negligently designed and installed in the Heinz's home, and that the system failed to comply with local, state and national standards and codes established by the fire prevention industry. (Exhibit A).  Plaintiff further alleges that the defendant's negligence resulted in a delay in the detection of a fire at the premises on July 23, 2001, and a delay in the subsequent notification of the local fire department, which allegedly resulted in increased property damage and loss. (Exhibit A).

For the reasons set forth in more detail below, the plaintiff's expert's second report should not be admissible as evidence, pursuant to FRE Rule 702, 28 U.S.C.A.

1

## STATEMENT OF FACTS

On February 14, 2000, Harold and Lauren Heinz entered into a contract with defendant, Command Force Security Systems, Inc., to install a security system at their home, 34 Wildwood Drive, Wilton, Connecticut (hereinafter "the premises"), which included smoke detectors, motion detectors and capability for central station monitoring. (Exhibit A).

The premises, a one-story ranch, single-family, residential dwelling (Exhibit G, P.1) was originally built in 1967 (Exhibit K) and was purchased by Harold and Lauren Heinz in 1996 or 1997 (Exhibit K). A permit for an addition and renovations was issued by the Town Of Wilton, to Mr. And Mrs. Heinz on August 19, 1999 (Exhibit D). Subsequently, extensive remodeling took place, with the addition of several rooms and a two-car garage on the main level (Exhibit K) however, the lower level was unchanged.[1] (Exhibit O).

Sometime prior to February 2000, Mr. Heinz desired to increase the insurance coverage on the premises (Exhibit K) and was advised by his insurance broker that because the house was valued over $500,000, he would be required to have a fire alarm system installed in the home. (Exhibit K). Consequently, either he or Mrs. Heinz, contacted Matthew Matza, the President of Command Force Security Systems, Inc., relative to the installation of a security system at the premises. (Exhibit M).

On February 14, 2000, Lauren Heinz signed a contract for the installation of the security system at the premises. (Exhibit A). Immediately thereafter, Anthony

---

[1] Included in the file of plaintiff's expert T.J. Klem, was a floor-plan of the home dated April 1967, which was identical to the floor plan sketched by T.J.Klem & Assoc. post fire of July 23, 2001. (Exhibit O).

Pasquerella, an alarm-installer and employee of defendant Command Force Security Systems, Inc., installed the following at the 34 Wildwood Drive home:  three smoke detectors (one smoke detector on the lower level, and two smoke detectors on the main level); three motion detectors (one motion detector on the lower level and two motion detectors on the main level); a power control panel and digital communicator; and a "water sensor" in the indoor pool room on the lower level. (Exhibit M.).  The total charged for this security system was $1700 (exclusive of the monthly central station monitoring fee). (Exhibit M).

On July 23, 2001, at 11:06:19 AM, an alarm was transmitted from the premises to the central monitoring station, indicating the presence of a fire at the premises. (Exhibit Q).  At 11:06:26 AM, a call was made from the monitoring station to the home, and a message was left. (Exhibit Q). At 11:07:18 AM, a second call was made to the premises, and a message was left. (Exhibit Q).  At 11:08:13 AM, the Wilton Fire Department was contacted. (Exhibit Q).  At 11:09:15, contact was made with Harold Heinz  (Exhibit Q). At 1:14:31 PM, the central monitoring station was contacted by Officer Godfrey, who confirmed that there was a fire at the premises. (Exhibit Q).

At the time of the fire at the premises on July 23, 2001, Mr. Heinz had homeowner's insurance from Encompass Insurance, policy number US 196581324, with a policy period of 7/3/01 – 7/3/02. (Exhibit D).  Mr. Heinz testified that he had several conversations with Jake Mollenkopf from Encompass Insurance about reimbursement for the fire damage. (Exhibit K).

The day after the fire, July 24, 2001, Dave Bostrum, a representative of Encompass Insurance (who was later replaced by Jake Mollenkopf as the liaison between

Mr. Klem and Encompass) called Thomas J. Klem (later designated as plaintiff's expert) and retained the services of T.J. Klem and Associates, Certified Fire Investigators and Fire Protection Engineers, to investigate and report on the origin and cause of the fire, as well as to comment on the fire alarm sequencing, in light of the magnitude of the fire. (Exhibit I; and Exhibit G). Joe Folger and Kevin Murphy, both employees of T.J.Klem & Assoc., were sent to the premises the day after the fire (July 25, 2001). (Exhibit I). After their investigation of the fire scene, extensive and comprehensive conversations took place, between Mr. Folger, Mr. Murphy and Mr. Klem, during which Mr. Klem was thoroughly apprised of the results of their investigations. (Exhibit I). Afterwards, Mr. Folger wrote the report. (Exhibit I). Mr. Klem testified that he reviewed the report and agreed with the technical content therein; and placed his signature block or co-author position on the front page of the report. (Exhibit I). He then sent the report out himself, to Jake Mollenkopf at Encompass Insurance. (Exhibit I). Although the report was undated, it was most likely written within a month of the fire, or by August 23, 2001 (hereinafter Report "1"). (Exhibit I).

Report "1" indicated that the fire originated in a bedroom on the lower level of the home, spread from there to the exterior of the structure and then to the room above. (Exhibit G). It was further stated that the "building contained a fire detection alarm system (with smoke detectors positioned about the home according to National standards at the time of their installation) that was operable at the time of the incident . . .." (Exhibit G).

Based upon an examination of the fire scene and discussions with both the home owner, Harold Heinz, and the Deputy Fire Marshal David Kohn, of the Town of Wilton

Fire Department, Mr. Klem and Mr. Folger concluded in Report 1 that: ". . . the most likely scenario for this fire is that the cat jumped onto the basket of clothing next to the night table then onto the table to get the [sic] bed. The lamp was knocked over onto the bed and ignited the combustible materials." (Exhibit G). With regard to the issue of fire alarm sequencing, the report noted that ". . . considering the location of the smoke detector, we would expect that the alarm would have been transmitted to the fire alarm company while the fire was still in the controllable phase." (Exhibit G).

In October 2001, a representative from Morrison, Mahoney & Miller (plaintiff's attorney's firm), Attorney Catherine Stewart was in contact with Mr. Klem, and a meeting was arranged at the premises. This meeting with Attorney Stewart and Mr. Mollenkopf from the Insurance Company, was the one and only time that Mr. Klem was ever at the premises. (Exhibit I). At that time, Mr. Klem took photographs, but did not speak with either the homeowner or Fire Marshal Kohn. (Exhibit I).

Although Mr. Klem's one and only visit to the premises occurred in October 2001, it was not until March 2003, more than a year and a half after the fire, and about seventeen months after his only visit to the premises, that Mr. Klem was asked by plaintiff's attorney, Attorney Joseph Mascaro, from Morrison, Mahoney & Miller, to issue a second report (hereinafter Report "2"). (Exhibit I). The purpose of Report 2, as stated in the beginning of the report, was solely to assess the adequacy of the structure's installed fire detection/alarm system (which included alarm monitoring) in providing early detection of a fire, notification to the monitoring company, timely notification of the fire department and the system's ability to achieve life safety of the occupants and to limit fire damage to the home." (Exhibit H). Mr. Klem concluded in Report 2, contrary

to his conclusion in Report 1, that the installed fire detection system within this residence was inadequate.

Shortly thereafter, on May 6, 2003, the plaintiff served the Summons and Complaint in this matter. (Exhibit A).

## ARGUMENT

### POINT 1

**PLAINTIFF'S EXPERT'S SECOND REPORT IS TOTALLY UNRELIABLE AND SHOULD BE PRECLUDED AS A MATTER OF LAW**

In order for expert opinion testimony to be admissible as evidence, it must comply with the Federal Rules of Evidence, specifically, Rule 702.  This rule provides the following:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise *if* (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."
> FRE Rule 702, 28 U.S.C.A.

The Second Circuit Court of Appeals has interpreted Rule 702 in light of the principles elucidated in *Daubert v. Merrell Dow Pharmaceuticals, Inc,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  That is, the Court is the "gatekeeper", and has the duty to ensure that expert scientific and technical testimony is both reliable and relevant, before being admitted at trial. *Amorgianos v. National Railroad Passenger Corporation, et al.,* 303 F.3d 256 (2d Cir. 2002) (quoting *Daubert,* 509 U.S. 579 at 597, 113 S.Ct. 2786).

6

Likewise, the United States District Court in Connecticut, also relying on *Daubert* has held that the standard for admitting proffered expert testimony is that "the proponent of the expert testimony has the burden of demonstrating by a preponderance of the evidence that the testimony is competent, relevant and reliable." *Perkins v. Origin Medsystems, Inc*, 299 F. Supp.2d 45 at 52 (D.Conn.2004) (internal citations omitted) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc,* 509 U.S. 579 at 592 n. 10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

Lastly, the Connecticut State Supreme Court held in *State v. Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. Denied, 523 U.S. 1058, 118 S.Ct. 1384, 140 L.Ed.2d 645 (1998) that "*Daubert* provides the proper threshold standard for the admissibility of scientific evidence in Connecticut." *Porter,* 241 Conn. 57 at 59, 698 A.2d 739 at 742.

It must follow, then, that if expert testimony is not reliable or is not the product of reliable principles or methodology, the Court should preclude the evidence as it does not comply with Rule 702 of the Federal Rules of Evidence as interpreted, and is thus inadmissible. In the case at bar, the second report (Report "2") generated by plaintiff's expert, as shall be set forth in detail below, is fatally flawed and unreliable, therefore, it should be precluded as a matter of law.

**A.     Report "2" was not based on research conducted independently of this litigation and should therefore be inadmissible as evidence**

One indicia of reliability to be used when determining the admissibility of expert testimony, is whether or not the expert is "proposing to testify about matters growing naturally and directly out of research [he has] conducted independent of the litigation, or

whether [he has] developed [his] opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 43 F.3d 1311, 1317 (9th Cir. 1995); *see* FRE 702, 28 U.S.C.A.

In this case, plaintiff's expert, Thomas Klem, has provided two reports to plaintiff's attorneys, relative to the same incident, that is, the fire at the premises (34 Wildwood Dr., Wilton, CT) on July 23, 2001. (Exhibit G and Exhibit H). The first report (Report "1") was commissioned by the homeowner's insurance company, Encompass, the day after the fire, July 24, 2001. Mr. Klem testified that although he did not actually write the report, he reviewed it, signed off on it, and was the one to actually send the report to Encompass Insurance. (Exhibit I). Report "1" did not find any fault with the alarm system installed by defendant Command Force. The smoke in the house was detected, a signal was generated and sent to a central monitoring station, from where phone calls were made to the homeowner and to the Wilton Fire Department. Report "1" concluded that the fire was still in a "controllable phase" when the alarm was transmitted to the fire alarm company (i.e. central monitoring station). (Exhibit G).

The second report (Report "2") was commissioned a year and a half later (March 2003), this time by attorneys working for the plaintiff Insurance Company. The report was reviewed and authored by Mr. Klem. In Report "2", however, in direct contrast to the findings in his first report, Mr. Klem concluded that the alarm system installed by the defendant was "inadequate". (Exhibit H).

The Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 43 F.3d at 1318, held that "[e]stablishing that an expert's proffered testimony grows out of pre-litigation research or that the expert's research has been subjected to peer review are the two

principal ways the proponent of expert testimony can show that the evidence satisfies the first prong of Rule 702." Here, Report 2 does not meet the standard for reliability of expert testimony, because the research was not conducted independent of the litigation, rather, the research was the direct result of Mr. Klem having been approached by attorneys on behalf of the plaintiff, and asked to supplement his report. Thus, Report 2 is inherently unreliable, and should be precluded as evidence.

In contrast, Report 1 did grow naturally and directly out of research conducted independently of litigation. Research for Report 1 began on July 24, 2001, and was completed on or before August 24, 2001. (Exhibit I). The official fire reports were reviewed, discussions were had with the homeowner as well as the Fire Marshall from the Wilton Fire Department, and the premises and the fire scene was examined. (Exhibit I). The report concluded that the alarm system performed adequately. (Exhibit G). Consequently, Report "1" meets one of the important indicia for reliability and complies with Rule 702 as being admissible as expert testimony.

**B.     The conclusions of Report "2" were not generated by a reliable methodology, therefore, Report "2" must be held inadmissible.**

Under *Daubert*, the Court must focus on whether the methodology employed by the expert was/is reliable. *See Daubert*, 509 U.S. at 590, 595, 113 S.Ct. 2786; *See also Amorgianos*, 137 F.Supp.2d at 162 (E.D.N.Y.2001). Mr. Klem's Report 2 is based upon methodology that is inconsistent, flawed, and unsupported by his own deposition testimony, therefore, Report 2 is unreliable and should be inadmissible as evidence.

Mr. Klem testified that Report "1" was prepared in July 2001. (Exhibit I)  At that time, investigators from his company were at the fire scene and photographs were taken, which were attached to Report 1. (Exhibit I).  Additionally, the investigators spoke with the Fire Marshall from the Wilton Fire Department, and with the homeowner, Mr. Heinz. (Exhibit I).  Thus, visual observations and conversations with others, were part of the methodology of Report 1.

In contrast, however, many of the methods used in Report 1 were not used in Report 2.  Mr. Klem returned to the fire scene in October 2001 with plaintiff's attorney and with a representative of Encompass Insurance Company.(Exhibit I).  Although Mr. Klem testified that in October of 2001, he took pictures of the fire scene, as did the investigators for Report 1, the photographs were not attached to Report 2, as the other pictures had been to Report 1. (Exhibit I).  The photographs obtained by Mr. Klem for Report 2 were not date-stamped.(Exhibit I).  This lack of proper foundation, would limit the expert's ability to introduce the photographs into evidence, and he would not be able to use them to prove any of his theories about the fire scene.  Likewise, Mr. Klem did not converse with the Fire Marshal or the homeowner.  Mr. Klem's testimony was quite clear on this issue:

Q:      And did you speak to Fire Marshal Kohn on the telephone?

A:      I did not. (Exhibit I)

* * * * * * * *

Q.:     Did you ever speak directly to Mr. Heinz about this case?

A:      I don't believe so. (Exhibit I)

Obviously, Mr. Klem did not employ the same methods of investigation for the second report, as were employed for the first report. These inconsistencies would lead one to surmise that one of the reports does not have a reliable foundation. Since Mr. Klem testified that not only did he agree with Report 1, but that he also reviewed it, signed off on it, and personally sent it to the Insurance Company, the Court should accordingly find that Report 2 is unreliable. As the Court in *Perkins* stated, "Expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apple and oranges comparison." *Perkins, et al. v. Origin Medsystems, Inc.*, 299 F. Supp2d at 54 (quoting *Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

Moreover, Mr. Klem's methodology in Report 2 is also unreliable because he lost his original data, and is unable to show documentary evidence that his findings can be replicated. In the beginning of Report 2, Mr. Klem listed the various tasks he performed in order to formulate his conclusion.(Exhibit H). One task was the use of computer fire models to evaluate various fire scenarios to estimate detection times.(Exhibit H). When questioned as to the use of fire modeling for the case at bar, Mr. Klem testified that the computer tests were performed in two intervals. (Exhibit J). The first time was right before he wrote Report 2, or approximately in February 2003. (Exhibit J). Mr. Klem went on to testify that after he wrote Report 2, he lost all of his original data due to a computer crash. A few months prior to his second deposition in May 2004, that is February or March 2004 (of note, Mr. Klem's first deposition was March 16, 2004), he testified that he tried to replicate the original information, however, he had no documentary evidence to prove that he had been successful. (Exhibit J).

11

Mr Klem testified as follows:

> Q:      When you downloaded that model after the crash, was that the same version that you had used the first time?

> A:      I don't know.

> Q:      And the data you put in the second time to back up this report . . . was that identical to the data you put in the first time?

> A:      I believe it was.

> Q:      You believe it was or was it?

> A:      I have no reason to believe it was not. (Exhibit J)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> Q:      I'm not asking you about the - - I'm asking you, did you keep copies of the actual data that you typed into the fire computer model?

> A:      No, I don't have that. (Exhibit J)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> Q:      But you don't have any documentary evidence to show me that it is exactly the same data, correct?

> A:      Just my sworn testimony.

> Q:      But your sworn testimony is not documentary evidence, correct?

> A:      That's correct. (Exhibit J).

Obviously, if Mr. Klem's findings, and the data he used to come to those findings, cannot be replicated, they cannot assist the trier of fact in understanding the evidence or determining a fact in issue, as is required pursuant to FRE 702. Thus, Report 2 that incorporated data obtained through computer modeling which cannot be corroborated, is unreliable as expert testimony and should be precluded.

Even more disconcerting, is the fact that when Mr. Klem returned to the premises in October of 2001 to investigate the fire scene and take pictures, the premises and fire scene had been altered.(Exhibit I). He was not viewing the same setting or evidence, as

Mr. Folger, Mr. Murphy, Mr. Heinz or Fire Marshal Kohn had seen in July 2001. For example, other smoke detectors had been placed around the house, and objects had been removed from the premises; yet he still based Report 2 in March 2003, on his inspection of an altered fire scene from October 2001. (Exhibit I).

Furthermore, the plaintiff's entire case centers on their allegation that a smoke detector installed by the defendant did not promptly send a signal to the central monitoring station. (Exhibit A)  Unbelievably, Mr. Klem testified that he does not, and did not know on the date of the fire, which smoke detector in the home triggered the fire signal. His testimony to that effect is as follows:

> Q:      Do you know, on the date of the fire, which smoke detector in that house triggered a signal to the central station?
>
> A:      No.
>
> Q:      Did you ever make a determination as to that at any point before coming here today?
>
> A:      No. (Exhibit J)

The U.S. District Court in Connecticut held in *Perkins, et al. v. Origin Medsystems, Inc.*, 299 F. Supp2d 45 (D.Conn 2004), that an "expert's testimony must be held inadmissible if there is simply too great an analytical gap between the data and the opinion proffered such that the opinion is connected to the existing data only by the ipse dixit of the expert." *Id.* at 54. (quoting *Amorgianos*, 303 F.3d at 266 (E.D.N.Y.2001)). Such is the case here. Mr. Klem would have us believe the conclusions in Report "2" merely because he says it is so, even though his methodology is flawed, and he does not even know which smoke detector in the home triggered the central monitoring station.

Obviously, the methodology employed by the expert in obtaining his research for Report

"2" is unreliable, and therefore must be precluded.

**C.    Mr. Klem agrees with the findings in Report "1".  As Report "1" does not agree with Report "2", Report "2" is unreliable and should be precluded.**

Plaintiff's expert himself could find no fault with Report 1, or the conclusions set

forth therein. (Exhibit I).  Mr. Klem testified:

Q:    At the time that you reviewed Mr. Folger's report and before it went out, did you agree with the conclusions that Mr. Folger had found?

A:    Yes. And I just may add for clarity, when I review reports, I place my signature block or coauthor position on the front page of the report.  So I'm implying by that a review and an agreement with the technical content of the report.

Q:    And did you do that in this case?

A:    I did. (Exhibit I)

Mr. Klem further testified:

Q:    When you wrote your second report , . . . does this report contain any sentence, language or words that say to ignore the first report?

A:    No. (Exhibit J)

Lastly, during Mr. Klem's second deposition, questions were asked relative to the

content of Report 2, the report which he himself wrote. Specifically:

Q    This second report . . . do you see paragraph - - the first full paragraph on page 4, second sentence says, "The 1996 edition and prior editions of the National Code did not require smoke detectors within bedrooms, however, later editions of the Code do require detectors within bedrooms."  Do you still agree with that?

A:    No.

Q:    You don't agree with this statement?

A:    No, I don't.

14

Q:    But you put this in your report, correct?

A:    Correct.

Q:    And you signed off on this report?

A:    I didn't sign it, but I authored it.

Q:    You approved it, authored it, and sent it to Morrison, Mahoney & Miller?

A:    Yes.

Q:    And now you're disagreeing with what you wrote in it?

A:    I do. (Exhibit J).

The conclusions in Report "1" are contradictory to the conclusions in Report "2". Even Mr. Klem does not agree with the conclusions in Report "2". Consequently, it is unfathomable, that if Mr. Klem agreed with the conclusions in Report 1, that he could also agree with the conclusions in Report "2"; and , by his own admission, he did not agree with parts of Report "2". Therefore, Report "2" does not comply with the indicia for reliability, and it should not be admissible as expert testimony.

The Second Circuit in *Amorgianos*, 303 F. 3d 256 at 267, held that to "warrant admissibility, however, it is critical that an expert's analysis be reliable at every step." The Court went on to quote Chief Judge Becker of the Third Circuit, "that means that *any* step that renders the analysis unreliable under the *Daubert* factors renders the testimony inadmissible." *In re Raoli R.R. Yard PCB Litig.,* 35 F.3d 717, 745 (3d Cir.1994); *see also Heller v. Shaw Indus., Inc. ,*167 F.3d 146 (3d Cir. 1999) at 155 ("[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.").

In the case at bar, the expert's Report "2" is completely unreliable and should not be admissible into evidence.

## **CONCLUSION**

For the foregoing reasons, defendant's motion pursuant to FRE Rule 702, to preclude the testimony of plaintiff's expert in the form of Report 2, should be granted.

Dated:  August 27, 2004
        New York, New York

        Yours, etc.

        **THE DEFENDANT**

        **COMMAND FORCE SECURITY SYSTEMS, INC.**

By:  _Carol S. Doty_
     **Carol S. Doty, Esq.  CT24974**
     KAUFMAN BORGEEST & RYAN LLP
     99 Park Avenue – 19th 72oor
     New York, New York 10016
     212-980-9600
     2121-980-9291 (Facsimile)
     cdoty@kbrny.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed to the following parties of record postage prepared this 27th day of August, 2004 as follows:

**Attorney Joseph E. Mascaro**
**Morrison, Mahoney & Miller, LLP**
**One Constitution Plaza, 10th Floor**
**Hartford, Connecticut  06103**
**(860) 616-4441**

_____
Carol S. Doty