UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLENS FALLS INSURANCE COMPANY
a/s/o HAROLD and LAUREN HEINZ,          :          CIVIL CASE NO. 303 CV 1015 (DJS)

      Plaintiff,                                    :

V.
                                                       :
COMMAND FORCE SECURITY
SYSTEMS, INC.

      Defendants                                :          August 27, 2004


## AFFIDAVIT OF CAROL S. DOTY


STATE OF NEW YORK    )
                          )ss.:
COUNTY OF NEW YORK )


      CAROL S. DOTY, being duly sworn, deposes and says:


      1.     I am an associate of the firm of Kaufman, Borgeest & Ryan LLP, attorneys for

the Defendant, Command Force Security Systems, Inc., and submit this affidavit in support

of Defendant's Motion for Summary Judgment.[1] As more fully set forth in the attached Rule

56.1 Statement and Memorandum of Law, Plaintiff's Complaint should be dismissed in its

entirety as there are no genuine issues of material facts for trial.

---

[1] We respectfully request that the Court first decide defendant's Motion to Preclude part of plaintiff's expert's testimony, which is being filed simultaneously with this Motion for Summary Judgment, before deciding the Motion for Summary Judgment.  As the Exhibits are almost the same for both motions, in the interest of judicial economy, we have attached all of the exhibits to this Motion for Summary Judgment, and have referenced such in the Motion for Preclusion.

**\*ORAL ARGUMENT IS REQUESTED**

2.    A true and correct copy of the Complaint is attached hereto as Exhibit "A".

3.    A true and correct copy of defendant's Notice of Removal is attached hereto as Exhibit "B".

4.    A true and correct copy of the defendant's Answer is attached hereto as Exhibit "C".

5.    A true and correct copy of excerpts of plaintiff's Rule 26(a) Disclosure is attached hereto as Exhibit "D".

6.    A true and correct copy of plaintiff's Responses to Defendant's Requests for Production and Interrogatories is attached hereto as Exhibit "E".

7.    A true and correct copy of plaintiff's Expert Witness Disclosure is attached hereto as Exhibit "F".

8.    A true and correct copy of plaintiff's expert's first investigational report (Report "1") is attached hereto as Exhibit "G".

9.    A true and correct copy of plaintiff's expert's second investigational report (Report "2") is attached hereto as Exhibit "H".

10.    A true and correct copy of plaintiff's expert's first deposition transcript, dated March 16, 2004 is attached hereto as Exhibit "I".

11.    A true and correct copy of plaintiff's expert's second deposition transcript, dated May 6, 2004 is attached hereto as Exhibit "J".

12.    A true and correct copy of Harold Heinz's deposition transcript, dated January 29, 2004 is attached hereto as Exhibit "K".

13.    A true and correct copy of Jake Mollenkopf's deposition transcript, dated January 7, 2004 is attached hereto as Exhibit "L".

14.    A true and correct copy of Matthew Matza's deposition transcript, dated February 9, 2004 is attached hereto as Exhibit "M".

15.    A true and correct copy of defendant's expert's deposition transcript, dated June 10, 2004 is attached hereto as Exhibit "N".

16.    A true and correct copy of excerpts of plaintiff's expert's file, minimized in size to fit on an 8 x 11 inch page, attached hereto as Exhibit "O".

17.    A true and correct copy of defendant's expert's report, dated January 27, 2004 is attached hereto as Exhibit "P".

18.    A true and correct copy of the Subscriber Activity Report, dated July 23, 2001 is attached hereto as Exhibit "Q".

19.    A true and correct copy of defendant's Expert Witness Disclosure is attached hereto as Exhibit "R".

20.    A true and correct copy of defendant's Response to Plaintiff's Interrogatories is attached hereto as Exhibit "S".

Dated: New York, New York
      August 27, 2004

                                      _Carol S. Doty_
                                Carol S. Doty    CT24974

Sworn to before me this 27th
day of August, 2004

_Michael R. Janes_
NOTARY PUBLIC

**MICHAEL R. JANES**
Notary Public, State of New York
No. 02JA6056830
Qualified in Queens County
Commissions Expires 4/02/20___

3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLENS FALLS INSURANCE COMPANY
a/s/o HAROLD and LAUREN HEINZ,   :   CIVIL CASE NO. 303 CV 1015 (DJS)

    Plaintiff,   :

V.

    :

COMMAND FORCE SECURITY
SYSTEMS, INC.

    Defendants   :   August 27, 2004

## RULE 56(a)(1) STATEMENT

Pursuant to Local Rule 56(a)(1), Defendant Command Force Security Systems,

Inc., by its attorneys, Kaufman Borgeest & Ryan LLP, respectfully submits the following

undisputed facts in support of its motion for summary judgment:

    1.    This is a subrogation action, brought by plaintiff, Glens Falls Insurance

Company (a Delaware Corporation), as a subrogee of Harold and Lauren Heinz, for

monetary damages, which were incurred after a fire at their home on July 23, 2001.

(Exhibit A).

    2.    The defendant is Command Force Security Systems, Inc., (hereinafter,

Command Force) a company with a principal place of business in the State of New York.

(Exhibit A).

    3.    The home of Harold and Lauren Heinz, and the scene of the fire on July 23,

2001, is located at 34 Wildwood Drive, Wilton, Connecticut (hereinafter the "premises").

(Exhibit A).

4. The premises is a single-family, residential home. (Exhibit J).

5. The premises was built in 1967. (Exhibit D).

6. Lauren Heinz signed a contract on February 14, 2000, authorizing Command Force to alarm and install the following: one control panel and digital communicator; one water sensor by pool; one motion detector on the downstairs level; one smoke detector on the downstairs level; two smoke detectors on the main level; and two motion detectors on the main level. (Exhibit S).

7. Harold Heinz would not have had the alarm system installed if it had not been a requirement of the insurance company. (Exhibit K).

8. Two new bedrooms were added to the original premises, sometime late in the year 2000, after defendant had installed 3 smoke detectors at the premises. (Exhibit K).

9. Two additional battery operated smoke detectors were installed in the home, after renovations were complete and after defendant had already installed 3 smoke detectors, by the contractor "Jimmy" (surname not recalled); one in each new bedroom. (Exhibit K).

10. A fire occurred at the premises on July 23, 2001. (Exhibit A).

11. The room of fire origin was a bedroom on the lower level. (Exhibit D).

12. On July 23, 2001, at 11:06:19 AM, an alarm was transmitted from the premises to the central monitoring station, indicating the presence of a fire at the premises. (Exhibit Q).

13. At 11:06:26 AM, a call was made from the monitoring station to the home, and a message was left. (Exhibit Q).

14.    At 11:07:18 AM, a second call was made to the premises, and a message was left. (Exhibit Q).

15.    At 11:08:13 AM, the Wilton Fire Department was contacted. (Exhibit Q).

16.    At 11:09:15, the central monitoring station contacted Harold Heinz  (Exhibit Q).

17.    At 1:14:31 PM, the central monitoring station was contacted by Officer Godfrey, who confirmed that there was a fire at the premises. (Exhibit Q).

18.    The Wilton Fire Marshall, David Kohn, concluded after his investigation that the fire was most likely started by the heat of the lamp bulb, which ignited combustibles on the bed in the bedroom on the lower level, after the lamp was knocked over onto the bed by the cat, whose remains were found on the bed springs. (Exhibit D).

19.    Dave Bostrum, a representative of Encompass Insurance Company, called Thomas J. Klem (later designated as plaintiff's expert) and retained the services of T.J. Klem and Associates, Certified Fire Investigators and Fire Protection Engineers, to investigate and report on the origin and cause of the fire, as well as to comment on the fire alarm sequencing, in light of the magnitude of the fire. (Exhibit I; and Exhibit G).

20.    Joe Folger and Kevin Murphy, both employees of T.J.Klem & Assoc., were sent to the premises the day after the fire (July 25, 2001) to investigate the fire scene. (Exhibit I).

21.    Mr. Folger and Mr. Murphy examined the fire scene, and had discussions with both the home owner, Harold Heinz, and the Deputy Fire Marshal David Kohn, of the Town of Wilton Fire Department. (Exhibit I).

3

22.    Extensive and comprehensive conversations took place, between Mr. Folger, Mr. Murphy and Mr. Klem, during which Mr. Klem was thoroughly apprised of the results of their investigations. (Exhibit I).

23.    Afterwards, Mr. Folger wrote the report. (Exhibit I).

24.    Mr. Klem reviewed the report and agreed with the technical content therein; and placed his signature block or co-author position on the front page of the report. (Exhibit I).

25.    Mr. Klem sent the report out himself, to Jake Mollenkopf at Encompass Insurance on or about August 24, 2001. (Exhibit I).

26.    This first report concluded that the "building contained a fire detection alarm system (with smoke detectors positioned about the home according to National standards at the time of their installation) that was operable at the time of the incident . . .." (Exhibit G).

27.    With regard to the alarm sequencing, the first report also concluded that ". . . considering the location of the smoke detector, we would expect that the alarm would have been transmitted to the fire alarm company while the fire was still in the controllable phase." (Exhibit G).

28.    Plaintiff's expert, Mr. Klem, agreed with the conclusions of the first report (hereinafter Report "1"). (Exhibit I).

29.    No one expressed dissatisfaction with Mr. Klem's first report. (Exhibit I).

30.    In October 2001, a representative from Morrison, Mahoney & Miller (plaintiff's attorney's firm), Attorney Catherine Stewart, contacted Mr. Klem, and

4

arranged for Mr. Klem, Attorney Stewart and Mr. Mollenkopf from Encompass Insurance to meet at the premises. (Exhibit I).

31.     In March 2003, Mr. Klem was asked by plaintiff's attorney, Attorney Joseph Mascaro, from Morrison, Mahoney & Miller, to issue a second report (hereinafter Report "2").

32.     In Report "2", Mr. Klem concluded that the fire alarm system at the premises was inadequate. (Exhibit H).

33.     In July 2001, at the time of the fire, there was no NFPA requirement that a residential home, such as the one at 34 Wildwood Dr., Wilton, CT, had to have a centrally-monitored smoke detection system. (Exhibit I).

34.     In 2004, there is still no requirement by the NFPA that a residential home, even one with new construction, has to have a centrally-monitored smoke detector system. (Exhibit I).

35.     In July 2001, at the time of the fire, there was no local Connecticut state code that required centrally monitored smoke detectors. (Exhibit J).

36.     There is no local Connecticut State code or law that requires a smoke detector to be placed in each bedroom, of an existing residential, single-family dwelling. (Exhibit J).

37.     Mr. Klem does not know which one of the three smoke detectors that the defendant installed at the premises triggered the central alarm. (Exhibit J).

38.     Mr. Klem lost all of his original data that he used to run computer fire models due to a computer crash in early 2002. (Exhibit J).

39.     Mr. Klem disagrees with his Report "2", specifically, the first paragraph, page 4; wherein it is stated that the 1996 edition and prior editions of the codes did not require smoke detectors within bedroom, but later editions of the code do require detectors within bedrooms. (Exhibit J).

40.     Mr. Klem does not know what time the fire started, what time flashover occurred, or how long there was a smoke or flame condition before the smoke detector was triggered. (Exhibit J).

41.     If the smoke detector in the room of the fire origin was hard-wired but not centrally monitored, the fire department would not have been notified of the fire, if no one was at the premises. (Exhibit J).

Dated: August 27, 2004
        New York, New York

Yours, etc.

**THE DEFENDANT**

**COMMAND FORCE SECURITY SYSTEMS, INC.**

By:_____
    **Carol S. Doty, Esq.  CT24974**
    KAUFMAN BORGEEST & RYAN LLP
    99 Park Avenue – 19th 72oor
    New York, New York 10016
    212-980-9600
    2121-980-9291 (Facsimile)
    cdoty@kbrny.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was mailed to the following parties of record postage prepared this 27th day of August, 2004 as follows:

**Attorney Joseph E. Mascaro**
**Morrison, Mahoney & Miller, LLP**
**One Constitution Plaza, 10th Floor**
**Hartford, Connecticut  06103**
**(860) 616-4441**

Carol S. Doty

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLENS FALLS INSURANCE COMPANY
a/s/o HAROLD and LAUREN HEINZ,    :        CIVIL CASE NO. 303 CV 1015 (DJS)

       Plaintiff,              :

V.

                            :

COMMAND FORCE SECURITY
SYSTEMS, INC.

       Defendants          :        August 27, 2004

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

KAUFMAN BORGEEST & RYAN LLP
Attorneys for Defendant
COMMAND FORCE SECURITY
SYSTEMS, INC.
99 Park Avenue, 19th Floor
New York, New York 10016
(212) 980-9600

Of Counsel:

Carol S. Doty, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

SUMMARY JUDGMENT STANDARD .........................................................................6

ARGUMENTS...................................................................................................................7

    POINT I      THE CLAIMS AGAINST THE DEFENDANT ARE
                COMPLETELY BASELESS AND SHOULD
                BE DISMISSED AS A MATTER OF LAW..............................................7

           A.   Plaintiff has no proof in any admissible
               form that the defendant violated any statutes,
               rules or regulations; therefore, their claims
               should be dismissed as a matter of law.................................................7

           B.   Plaintiff's expert's second report is unreliable,
               and does not rise to the standard necessary to
               qualify as expert opinion testimony, therefore,
               no issue of fact exists .......................................................................12

           C.   The area alarmed by the defendant was not new
               construction, therefore, none of the rules, regulations,
               or codes that apply to new construction apply in this case
               and there is no issue of triable fact.....................................................13

CONCLUSION.................................................................................................................15

CERTIFICATE OF SERVICE .........................................................................................16

# TABLE OF AUTHORITIES

**Page**

1.      Allen v. Coughlin
        64 F.3d 77, 80 (2d Cir.1995)..................................................................................7

2.      Anderson v. Liberty Lobby, Inc.
        477 U.S. 242, 106 S.Ct. 2505 (1986)…………………………..………………………6

3.      Celotex Corp v. Catrett,
        477 U.S. 317, 106 S.Ct. 2548 (1986)…………………………………………...………6

4.      Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp.
        153 F.3d 61 (2d Cir. 1998) ..................................................................................6

5.      Masushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.
        475 U.S. 574, 106 S.Ct. 1348 (1986) ..................................................................7

6.      Meri v. Dacon
        759 F.2d 989 (2d Cir. 1985)..................................................................................6

7.      Western World Ins. Co. v. Stack Oil, Inc,
        922 F.2d 118 (2d Cir. 1990)..................................................................................7

## STATUTES

1.      Fed. Rules Civ. Proc. Rule 56(c), 28 U.S.C.A..............................................................7, 17

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the within Motion on behalf of the defendant, Command Force Security Systems, Inc, which seeks an Order pursuant to FRCP Rule 56(c), granting this Motion for Summary Judgment, as there are no genuine issues of triable fact in this matter, and the defendant is entitled to Summary Judgment as a matter of law.

This is a subrogation action, brought by plaintiff, Glens Falls Insurance Company (a Delaware Corporation), as a subrogee of Harold and Lauren Heinz, for monetary damages, which were incurred after a fire at their home on July 23, 2001. (Exhibit A). This action was originally venued in Superior Court, Stamford, Connecticut and was commenced by service of a Summons and Complaint dated May 6, 2003, upon the defendant, Command Force Security Systems, Inc., a company with a principal place of business in the State of New York. (Exhibit A).    Thereafter, on June 5, 2003, this matter was removed to the U.S. District Court for the Connecticut District, on the basis of complete diversity of citizenship. (Exhibit B).

The plaintiff alleges that the alarm system installed in the home by defendant Command Force Security Systems, Inc, was negligently designed and installed in the Heinz's home, and that the system failed to comply with local, state and national standards and codes established by the fire prevention industry. (Exhibit A).  Plaintiff further alleges that the defendant's negligence resulted in a delay in the detection of a fire at the premises on July 23, 2001, and a delay in the subsequent notification of the local fire department, which allegedly resulted in increased property damage and loss. (Exhibit A).

1

## STATEMENT OF FACTS

On February 14, 2000, Harold and Lauren Heinz entered into a contract with defendant, Command Force Security Systems, Inc., to install a security system at their home, 34 Wildwood Drive, Wilton, Connecticut (hereinafter "the premises"), which included smoke detectors, motion detectors and capability for central station monitoring. (Exhibit A).

The premises, a one-story ranch, single-family, residential dwelling (Exhibit G, P.1) was originally built in 1967 (Exhibit K) and was purchased by Harold and Lauren Heinz in 1996 or 1997 (Exhibit K).  A permit for an addition and renovations was issued by the Town Of Wilton, to Mr. And Mrs. Heinz on August 19, 1999 (Exhibit D). Subsequently, extensive remodeling took place, with the addition of several rooms and a two-car garage on the main level (Exhibit K) however, the lower level was unchanged.[1] (Exhibit O).

Sometime prior to February 2000, Mr. Heinz desired to increase the insurance coverage on the premises (Exhibit K) and was advised by his insurance broker that because the house was valued over $500,000, he would be required to have a fire alarm system installed in the home. (Exhibit K).  Consequently, either he or Mrs. Heinz, contacted Matthew Matza, the President of Command Force Security Systems, Inc., relative to the installation of a security system at the premises. (Exhibit M).

On February 14, 2000, Lauren Heinz signed a contract for the installation of the security system at the premises. (Exhibit A).  Immediately thereafter, Anthony Pasquerella, an alarm-installer and employee of defendant Command Force Security

---

[1] Included in the file of plaintiff's expert T.J. Klem, was a floor-plan of the home dated April 1967, which was identical to the floor plan sketched by T.J.Klem & Assoc. post fire of July 23, 2001. (Exhibit O).

Systems, Inc., installed the following at the 34 Wildwood Drive home: three smoke detectors (one smoke detector on the lower level, and two smoke detectors on the main level); three motion detectors (one motion detector on the lower level and two motion detectors on the main level); a power control panel and digital communicator; and a "water sensor" in the indoor pool room on the lower level. (Exhibit M.). The total charged for this security system was $1700 (exclusive of the monthly central station monitoring fee). (Exhibit M).

On July 23, 2001, at 11:06:19 AM, an alarm was transmitted from the premises to the central monitoring station, indicating the presence of a fire at the premises. (Exhibit Q). At 11:06:26 AM, a call was made from the monitoring station to the home, and a message was left. (Exhibit Q). At 11:07:18 AM, a second call was made to the premises, and a message was left. (Exhibit Q). At 11:08:13 AM, the Wilton Fire Department was contacted. (Exhibit Q). At 11:09:15, contact was made with Harold Heinz (Exhibit Q). At 1:14:31 PM, the central monitoring station was contacted by Officer Godfrey, who confirmed that there was a fire at the premises. (Exhibit Q).

At the time of the fire at the premises on July 23, 2001, Mr. Heinz had homeowner's insurance from Encompass Insurance, policy number US 196581324, with a policy period of 7/3/01 – 7/3/02. (Exhibit D). Mr. Heinz testified that he had several conversations with Jake Mollenkopf from Encompass Insurance about reimbursement for the fire damage. (Exhibit K).

The day after the fire, July 24, 2001, Dave Bostrum, a representative of Encompass Insurance (who was later replaced by Jake Mollenkopf as the liaison between Mr. Klem and Encompass) called Thomas J. Klem (later designated as plaintiff's expert)

3

and retained the services of T.J. Klem and Associates, Certified Fire Investigators and Fire Protection Engineers, to investigate and report on the origin and cause of the fire, as well as to comment on the fire alarm sequencing, in light of the magnitude of the fire. (Exhibit I; and Exhibit G). Joe Folger and Kevin Murphy, both employees of T.J.Klem & Assoc., were sent to the premises the day after the fire (July 25, 2001). (Exhibit I). After their investigation of the fire scene, extensive and comprehensive conversations took place, between Mr. Folger, Mr. Murphy and Mr. Klem, during which Mr. Klem was thoroughly apprised of the results of their investigations. (Exhibit I). Afterwards, Mr. Folger wrote the report. (Exhibit I). Mr. Klem testified that he reviewed the report and agreed with the technical content therein; and placed his signature block or co-author position on the front page of the report. (Exhibit I). He then sent the report out himself, to Jake Mollenkopf at Encompass Insurance. (Exhibit I). Although the report was undated, it was most likely written within a month of the fire, or by August 23, 2001 (hereinafter Report "1"). (Exhibit I).

Report "1" indicated that the fire originated in a bedroom on the lower level of the home, spread from there to the exterior of the structure and then to the room above. (Exhibit G). It was further stated that the "building contained a fire detection alarm system (with smoke detectors positioned about the home according to National standards at the time of their installation) that was operable at the time of the incident . . .." (Exhibit G).

Based upon an examination of the fire scene and discussions with both the home owner, Harold Heinz, and the Deputy Fire Marshal David Kohn, of the Town of Wilton Fire Department, Mr. Klem and Mr. Folger concluded in Report 1 that: ". . . the most

likely scenario for this fire is that the cat jumped onto the basket of clothing next to the night table then onto the table to get the [sic] bed.  The lamp was knocked over onto the bed and ignited the combustible materials." (Exhibit G).  With regard to the issue of fire alarm sequencing, the report noted that ". . . considering the location of the smoke detector, we would expect that the alarm would have been transmitted to the fire alarm company while the fire was still in the controllable phase." (Exhibit G).

In October 2001, a representative from Morrison, Mahoney & Miller (plaintiff's attorney's firm), Attorney Catherine Stewart was in contact with Mr. Klem, and a meeting was arranged at the premises.  This meeting with Attorney Stewart and Mr. Mollenkopf from the Insurance Company, was the one and only time that Mr. Klem was ever at the premises. (Exhibit I).  At that time, Mr. Klem took photographs, but did not speak with either the homeowner or Fire Marshal Kohn. (Exhibit I).

Although Mr. Klem's one and only visit to the premises occurred in October 2001, it was not until March 2003, more than a year and a half after the fire, and about seventeen months after his only visit to the premises, that Mr. Klem was asked by plaintiff's attorney, Attorney Joseph Mascaro, from Morrison, Mahoney & Miller, to issue a second report (hereinafter Report "2"). (Exhibit I). The purpose of Report 2, as stated in the beginning of the report, was solely to assess the adequacy of the structure's installed fire detection/alarm system (which included alarm monitoring) in providing early detection of a fire, notification to the monitoring company, timely notification of the fire department and the system's ability to achieve life safety of the occupants and to limit fire damage to the home." (Exhibit H).  Mr. Klem concluded in Report 2, contrary

5

to his conclusion in Report 1, that the installed fire detection system within this residence was inadequate.

Shortly thereafter, on May 6, 2003, the plaintiff served the Summons and Complaint in this matter. (Exhibit A). Pursuant to the Order of the Honorable District Judge Dominic J. Squatrito dated April 13, 2004, discovery was to be completed in this matter by June 30, 2004, and dispositive motions were to be filed by August 30, 2004; thus, the within motion for summary judgment is timely.

## SUMMARY JUDGMENT STANDARD

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less in discrimination cases than to . . . other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(d). A material fact is genuinely disputed only if based on that fact, a reasonable jury could find in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Harvis Trien & Beck, P.C., v. Federal Home Loan Mortgage Corp., 153 F.3d 61, 67 (2d Cir.1998).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact, which may be met either by affirmative evidence or by pointing to a lack of evidence pertaining to an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Although

6

inferences should be drawn in favor of the party opposing the motion, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990); See also Allen v. Coughlin, 64 F.3d 77, 80 (2d Cir. 1995) ("an adverse party may not rest upon the mere allegations . . . in its pleading, but its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"); Masushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1355 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). Furthermore, "if the admissible evidence is insufficient to permit a rational juror to find in favor of the plaintiff, the court remains free to direct a verdict or grant summary judgment for defendant."

**ARGUMENT**

**POINT I**

**THE CLAIMS AGAINST THE DEFENDANT ARE
COMPLETELY BASELESS  AND SHOULD
BE DISMISSED AS A MATTER OF LAW**

**A.      Plaintiff has no proof in any admissible form that the defendant violated any statutes, rules or regulations; therefore, their claims should be dismissed as a matter of law.**

Pursuant to the Federal Rules of Civil Procedure, Rule 56(c) provides:

> "The District Court may enter summary judgment when the
> motion papers, affidavits, and other evidence submitted to the
> court show that no genuine issue exists as to any material fact,
> and that the moving party is entitled to judgment as a matter of law."
> Fed. Rules Civ. Proc. Rule 56(c), 28 U.S.C.A.

In the case at bar, there are no issues of triable fact, and the defendant is entitled to summary judgment.  The crux of plaintiff's complaint, is that the defendant, Command Force Security Systems, Inc., failed to "adhere to the rules, regulations, directives, standards, codes and/or laws established by local, state and/or national agencies and/or by professionals within the fire prevention industry." (Exhibit A).  Throughout discovery, and most prominently in his Report "2" (written at the request of Attorney Masacaro), the plaintiff's expert, Thomas J. Klem, cited various codes from the NFPA (National Fire Protection Association), that he alleged the defendant had violated as a result of the installation of three smoke detectors at the premises.(Exhibit H).

During questioning at his deposition over a two-day period, however, Mr. Klem's sworn testimony differed greatly from his allegations and the allegations in the plaintiff's complaint.  Specifically, Mr. Klem testified that there were:

- No NFPA codes that require a centrally-monitored smoke detection system within a single-family residential home (Exhibit J, p. 231);

- No Connecticut State Rules, Regulations or Codes that require a smoke detector in every bedroom of an existing, single-family residential dwelling (Exhibit J, p. 242);

- No NFPA codes that require a smoke detector in every bedroom of an existing, single-family residential dwelling (Exhibit J, p. 242); and

- No Connecticut State Rule, Regulation or Code that requires a centrally-monitored smoke detection system within a single-family residential home (Exhibit J, p. 249 );

8

It is axiomatic that in order to bring a claim in negligence, the plaintiff must be able to prove the existence of a duty, the breach of that duty, proximate causation and damages. In this instance, the plaintiff cannot claim, or prove that the defendant breached a duty to the homeowners, Harold and Lauren Heinz. The defendant installed a fire detection system that worked as it was supposed to. A fire occurred at the premises, the alarm was triggered, the central monitoring station was appropriately notified, and in turn, the homeowner and the fire department were also notified. Command Force did not have a special duty pursuant to Codes, Standards, Rules or Regulations to install smoke detectors in any other manner than how they were installed. There was no duty to install a greater number, or to install ones that were more technologically advanced. As there was no duty, there was no breach, and no negligence.

Matthew Matza, the president of Command Force Security Systems, had several discussions with Harold Heinz about what kind of system Mr. Heinz wanted installed, prior to the final installation. (Exhibits K & M). Mr. Heinz testified that the only reason he even thought about having an alarm system installed was because his insurance company advised him that it was a requirement for homeowners when the value of the property was greater than $500,000. Consequently, Mr. Heinz contacted Mr. Matza, who had previously done work for Mr. Heinz at his business location. (Exhibits K & M). Both Mr. Heinz and Mr. Matza testified that the only reason Mr. Heinz was getting an alarm system was because he was told that he had to by his insurance company. (Exhibits K & M). This obviously was not a situation where the homeowner was looking for state-of-the-art equipment at a huge price. He wanted a system that would work, and would satisfy his insurance company, which is what he was provided. As discussed previously,

9

there are no rules or regulations requiring a centrally monitored system in a single-family, existing, residential dwelling. Thus, it follows that Mr. Matza did provide Mr. Heinz with more than the bare minimum, for he could have merely alarmed the house with battery operated smoke detectors. The system that Command Force installed, however, was more than is required by any state statute or code. More importantly, the alarm system did trigger an alarm to the monitoring station when there was a fire in the home. Even plaintiff's expert, Mr. Klem, testified that a battery operated system was adequate.

Q:    Would you agree that had a smoke detector been placed in the fire, in the room of fire origin and it was battery operated, that the fire department would more than likely not have been notified of the fire in the house?

A:    I agree.

Q:    Okay. Would you agree that if the smoke detector in the room of fire origin were hard wired but not centrally monitored, that there's a great likelihood also that fire department wouldn't have gotten notified of this fire?

A:    I agree.

Q:    And would you agree that a battery operated or hard wired smoke detector would have met, in your opinion, the code requirements that applied at that time?

A:    In the bedroom, yes, it would have met that. Had it been installed it would have met the requirements. (Exhibit J, p. 248).

Furthermore, as to Mr. Klem's allegations that the defendant should have placed smoke detectors in each bedroom based on these alleged Codes, Mr. Klem testified to the following:

Q        This second report . . . do you see paragraph - - the first full paragraph on page 4, second sentence says, "The 1996 edition and prior editions of the National Code did not require smoke detectors within bedrooms, however, later editions of the Code do require detectors within bedrooms." Do you still agree with that?

A:        No.

Q:        You don't agree with this statement?

A:        No, I don't.

Q:        But you put this in your report, correct?

A:        Correct.

Q:        And you signed off on this report?

A:        I didn't sign it, but I authored it.

Q:        You approved it, authored it, and sent it to Morrison, Mahoney & Miller?

A:        Yes.

Q:        And now you're disagreeing with what you wrote in it?

A:        I do. (Exhibit J, p.221).

* * * * * * * * * ** * ****

Mr. Klem also testified to the following:

Q:        Okay.  There's no sprinkler system required in a home of this type at that time; is that correct?

A:        In Connecticut.

Q:        In Connecticut?

A:        Not that I know of. (Exhibit J, p. 230).

11

In the instant case, as there were no statutes or codes violated by the defendant, all of the plaintiff's claims surrounding the issue of regulations, codes, rules and statutes should be dismissed as a matter of law as the plaintiff has absolutely no proof in any admissible form that the defendant violated any statutes, rules or regulations.

**B.     Plaintiff's expert's second report is unreliable, and does not rise to the standard necessary to qualify as expert opinion testimony, therefore no issue of fact exists.**

At the same time that the within motion for summary judgment was filed, defendant filed a motion to preclude plaintiff's expert's testimony.  Specifically, Mr. Klem's second report should be precluded because it does not meet the indicia necessary for reliability.

To reiterate briefly, Report "2" was not based on research conducted independently of this litigation; the conclusions of Report "2" were not obtained by a reliable methodology; and Mr. Klem agreed with the findings in Report "1", but disagreed with his own findings in Report "2".  For all of the foregoing reasons, hopefully, the Court has granted the defendant's motion to preclude Report "2".

With the Court's permission, should the motion to preclude be/been denied, we would still like to incorporate by reference the arguments outlined therein, as part of the within motion for summary judgment; and add that Mr. Klem's Report "2" should not be admissible for its veracity and/or accuracy, as there were too many inconsistencies between the report itself and Mr. Klem's testimony.

**C.    The area alarmed by the defendant was not new construction, therefore, none of the rules, regulations or codes that apply to new construction apply in this case and there is no issue of triable fact .**

Mr. Heinz testified that the premises was built in 1967, but had undergone renovations before the fire of 2001. (Exhibit K).  Misguidedly, Mr. Klem based many of his conclusions on rules and regulations that govern new construction; for instance, a battery operated smoke detector should be installed in every bedroom of a single-family residential dwelling, if it is *new construction*. (Exhibit J).

However, the lower level of the premises had not been significantly altered from 1967 up to and including the day of the fire.  Included with Mr. Klem's file exchanged at his deposition were several floor plans.  Some were sketched by Mr. Klem, others appeared to have been drawn by an architect.  At Exhibit O, is attached two diagrams of floor plans.  One appears to be an architect's rendering of the lower level of the home and is dated 4/12/67; the other is a hand-drawn sketch, made by Mr. Klem after the fire, and was used to show the origin of the fire and the placement of the smoke detectors.  One can see that the layout of the floor plan of the lower level  has not changed in the past 35 years.  That is, there are two bedrooms, a family room, an electric or utility room, and an indoor pool.  This configuration is the same on both diagrams.  Consequently, Mr. Klem is extremely misguided when he opines in Report "2" that a smoke detector was required to be inside each of the lower level bedrooms, as there was no new construction, and no statute, code or rule that requires a smoke detector in the bedroom of an existing residential dwelling. (Exhibit J, p. 242.)

13

Plaintiff's claims and allegations have been all smoke and mirrors throughout this entire litigation. Beginning with the complaint, wherein they make allegations and refer to regulations and statutes when none exist. Next, plaintiff's response to defendant's requests for production and interrogatories was received. Plaintiff's counsel advised in no less than 13 out of 25 interrogatories that information "will be provided"; and yet that information was not forthcoming for many months. (See Exhibit E). Their responses certainly did not amplify their pleadings.

When finally plaintiff's expert's information was provided, his reports are unreliable, and seem to have no basis in fact. His data is unsubstantiated, and cannot be replicated. He offers two reports, which totally contradict each other; and his testimony contradicts his own reports as well.

One is at a loss to understand on what basis the plaintiff's brought this lawsuit. This is true especially in light of a cursory review of the Heinz's insurance policy attached at Exhibit D and received as part of plaintiff's Rule 26(a) disclosure. Interestingly, there is an exclusion under the policy for payment on property damage or loss that was caused directly or indirectly by any pets owned by the policy holder. As Mr. Heinz owned the cat whom the fire marshal identified as being the culprit who knocked over the lamp onto the bed and at least indirectly caused the fire, it is quite amazing that the entire loss was not excluded. One wonders if there was some sort of gratuitous payment made (or an erroneous payment) on the part of Glens Falls, who now realizes their mistake and are trying diligently to recoup some of the over $900,000 paid to the Heinz family to rebuild their house, by suing the defendant. Nevertheless, the claims are unfounded, unsupported, and totally unproven. The defendant is definitely

entitled to summary judgment in this case where there is no genuine issue of triable fact

to put before a jury and no reliable expert testimony that supports their allegations.


## CONCLUSIONS

For all of the foregoing reasons, defendant's motion pursuant to FRE Rule 56(c)

for summary judgment should be granted.

Dated:  August 27, 2004
        New York, New York


Yours, etc.

**THE DEFENDANT**

**COMMAND FORCE SECURITY SYSTEMS, INC.**

By:_____
     **Carol S. Doty, Esq.** CT24974
KAUFMAN BORGEEST & RYAN LLP
99 Park Avenue – 19th 72oor
New York, New York 10016
212-980-9600
2121-980-9291 (Facsimile)
cdoty@kbrny.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was mailed to the following parties of record postage prepared this 27th day of August, 2004 as follows:

**Attorney Joseph E. Mascaro**
**Morrison, Mahoney & Miller, LLP**
**One Constitution Plaza, 10th Floor**
**Hartford, Connecticut 06103**
**(860) 616-4441**

_____
Carol S. Doty