T. J. Klem and Associates
Consulting Fire Protection Engineers
Certified Fire Investigators, IAAI
24 Robert Road
Stoughton, MA 02072
(781) 344-1115
Prepared by: Joseph Folger, CFI and
Thomas J. Klem, CFI
Fire Protection Engineer

**FIRE PROTECTION ANALYSIS
SINGLE FAMILY DWELLING
34 WILDWOOD DRIVE
WILTON, CT
D.O.L. 7/23/2001
CLAIM#0344971**

Prepared for: Jake Mollenkoph
Encompass Insurance
P.O. Box 319
Manasquan, NJ 08736

Background, Building Construction and Fire Incident

At approximately 11:09 AM on July 23, 2001, the Wilton, Connecticut, Fire Department received notification of an automatic fire alarm at 34 Wildwood Drive, in the Town of Wilton. Upon their dispatch, response, and arrival at the scene, firefighters observed a "working fire" in the single-family dwelling.

Arriving firefighters found heavy smoke throughout the structure and fire extending through the roof at the rear of the house. An initial attack was made to confine the fire to the lower level. A second attack line was stretched to the main floor to confine the fire there. The fire had extended from the room of origin on the lower level to a bedroom above on the main floor. Once flashover occurred in the room of origin, which caused the window glass to fail, the fire spread to the exterior of the structure and extended to the room above. A third attack line was advanced to the second floor over the garage to check for extension.

The structure is a contemporary style multi-level residential dwelling of wood construction built on a concrete foundation. The building is approximately 28 feet by 70 feet with an "ell" measuring 18 feet by 24 feet. The exterior of the structure has wood sidewalls and asphalt shingles on the roof. The structure was originally a one-story ranch that has been extensively remodeled to include an attached two-car garage on the main level and a swimming pool in the basement.

The building contained a fire detection alarm system (with smoke detectors positioned about the home according to National standards at the time of their installation) that was operable at the time of the incident and monitored by Command Force Security, 8103 252nd Street, Jamaica, NY 11426-1572, (718-

347-1572). The subscriber activity report shows that the alarm was received by Command Force Security at 11:06:19 AM and the Wilton Fire Department was contacted at 11:08:13 AM. The fire department arrived at the scene at 11:15 AM.

The building and property is owned by Harold Heinz, DOB 12/12/48, and his wife Lauren Heinz, DOB 01/15/53. They both resided at the residence at the time of the fire.

Soon after extinguishing the fire an investigation was initiated into the cause of the fire by Deputy Fire Marshal David Kohn, Connecticut State Police. Deputy Fire Marshal Kohn has determined that the source of the fire was related to a lamp that was located on a night table and knocked over by the family cat. The lamp landed on a bed adjacent to the table and ignited combustible materials on the bed.

On July 24, 2001, this reporting investigator was notified by Tom Klem, of T. J. Klem and Associates, of the loss in Wilton, Connecticut. Mr. Klem had been notified of the loss by David E. Bostrom of Encompass Insurance and requested to conduct an origin and cause of the fire that was further reported to have caused extensive damage to the building. Mr. Bostrom further provided Mr. Klem with the name of the insured; Harold and Lauren Heinz, who were provided coverage through Encompass Insurance. In turn Mr. Klem provided me with an initial overview of the fire and requested that I conduct an origin and cause investigation of the incident. Mr. Klem also indicated that because of the large loss and unknown amount of damage to the building, that I would be assisted by

another investigator, Mr. Kevin Murphy. I was instructed to meet with David Bostrom, Jerry Green and Jake Mollenkoph, on July 25, 2001, at the fire scene.

Fire Investigation

As previously arranged, this investigator and Mr. Murphy met with Mr. Bostrom, Mr. Green and Mr. Mollenkoph at 34 Wildwood Drive on July 25, 2001, at 10 AM. Mr. and Mrs. Heinz were also at the scene. Mr. Heinz provided me with an account of what he did on the morning of the fire before he left for work. Before leaving for work his daily routine was to go downstairs and feed the cat which is kept in a bedroom belonging to his son, Cory Heinz. Cory stays in Long Island, NY and comes home to visit usually one night a week. On the morning of the fire Mr. Heinz fed the cat, swept up some cat litter and left for work at approximately 8:00 AM. Mrs. Heinz left the house at the same time.

Mr. Heinz brought me to the approximately 12 feet by 11 feet bedroom in the basement level of the house. The area of the room on the east side was cleared of debris and the subject area of the Fire Marshal's investigation. In this area was a bed frame and the remains a night table. The north and west side of the room contained bedroom furnishings, audio equipment and clothing that were destroyed in the fire. Mr. Heinz stated that the lamp in question was on the night table next to the bed. The lamp was of the three-way type but did not go "on" in all three positions. He did not use the lamp or the bedroom wall light the morning of the fire. Mr. Heinz said that next to the night table were several bags and laundry baskets full of clothing. On the bed were five or six bags of clothes and a

cardboard box. These items were put there to prevent the cat from jumping onto the bed.

After this discussion with Mr. Heinz, this investigator and Mr. Murphy began an investigation of the fire. Photographs were taken during the scene examination and a diagram of the structure and room of origin was drawn. The door to the bedroom was open at the time of the fire with a gate across the doorway to confine the cat to the room. The metal bed frame was against the east wall of the room with one of the frame rails distorted from the heat of the fire. The only thing remaining of the box spring and mattress were the metal frame and coils that were also distorted by the fire. Only pieces of the night table remained and the lower part of a bureau was found. Everything in the room was either completely destroyed or consumed by the fire. The bedspring, remains of the night table and the bureau were put back in place in order to reconstruct the scene as it was before the fire. Parts of the lamp were found on the floor with the lamp cord still plugged into the wall receptacle.

The physical evidence of the growth, development, and spread of the fire as determined by this investigator seemed to confirm the fire marshal's determination of the location of the origin of the fire. The east side of the room of fire origin was the most severely damaged area with the fire spreading to the night table and bureau along the north wall. Further, this initial assessment determined that during the growth, development, and spread of the fire, the room reached flashover conditions and that the fire vented through the six foot picture window to the outside of the structure.

After this initial assessment and determination of the origin, this investigator began to examine the remains of the lamp that was located on the night table adjacent to the bed before the fire. The plug on the end of the lamp cord was still plugged into the wall receptacle on the north wall. Examination of the plug, cord and wall receptacle showed no sign of electrical arcing or overheating. The lampholder, or socket, that the bulb screws into could not be found. Other parts that were found included the stem, which the lamp shade holder is attached to, and the wire frame of the lampshade. Following the examination of the lamp the electrical wiring, switches and receptacles in the room of origin were checked for any indication of arcing or short-circuiting. The only receptacle that was being used in the room of origin at the time of the fire was the one the lamp was plugged into. The electrical panel in the utility room was also examined for any indication of an electrical fault. The panel was in excellent condition with no sign of electrical damage.

Following the examination of the scene this investigator called Deputy Fire Marshal Kohn and discussed the ignition scenario that he determined caused the fire. Marshal Kohn said that the lamp was found on the bed among the many combustibles that were on the bed. He further stated that the cat was also found on top of the debris on the bed. Ruling out all other possible causes he believes that the fire started from the lamp knocked over by the cat.

## Conclusions

The physical evidence examined by this investigator seems to indicate that the origin of this fire is associated with the lamp located on the night table and

knocked over onto the bed by the cat. The lamp and the cat were found on the bed after the fire was extinguished by the fire department. The most severe fire damage is also in the area of the bed. Although this area probably had the heaviest fire load in the room, the burn pattern clearly indicates that the point of origin was at the bed. Cory Heinz had not used the room for four nights.

It should be noted that Mr. Heinz does not use tobacco products, therefore, the use of smoking materials or careless disposal of smoking materials, was determined not a cause of the fire.

Considering the discussion with Mr. Heinz in regards to the cat and the location of the lamp it appears that the most likely ignition scenario for this fire is that the cat jumped onto the basket of clothing next to the night table then onto the table to get the bed. The lamp was knocked over onto the bed and ignited the combustible materials.

The lamp was reported not illuminated when Mr. Heinz left the room in the morning but the three-way switch on the lampholder would have to be in one of the "on" positions and one of the light bulb filaments burned out. When the lamp was knocked over the filament in the bulb made contact with the lead that it was previously connected to and caused the bulb to illuminate and produce heat. The light bulb came in contact with the lampshade or other combustible materials on the bed and caused ignition.

This investigator discussed this scenario with Donald Galler, an electrical engineer used by T. J. Klem and Associates, and he indicated that it was possible for the filament in a light bulb to reconnect to the hot lead and give off

6                                                      T. J. Klem and Associates
                                                       Certified Fire Investigators and
                                                       Fire Protection Engineers

light (i.e. heat of sufficient intensity to ignite clothing, bedding etc.). Thus this scenario is considered plausible based on the facts and corroborated by science, a necessary criteria for competent fire cause determinations. Therefore, it is the opinion of this investigator that these conditions most likely did occur and started the ignition process on July 23, 2001. To this end, our investigators have retained the lamp as evidence and are currently storing it in a storage locker controlled by T J Klem and Associates. We will continue to do so until further instructed by Encompass Insurance.

Finally, we were requested to comment on the fire alarm sequencing considering the magnitude of the fire upon arrival of the fire department. With the bedroom door open and considering the location of the smoke detector, we would expect that the alarm would have been transmitted to the fire alarm company while the fire was still in the controllable phase. The time to notify the fire department seems reasonable considering time of the registration of the alarm by dispatchers on both ends of the reporting process, although the attached actions of the alarm company indicate that they initially called the residence twice before reporting the alarm to the fire department. However, records and the contract of the alarm company and the insured should be obtained to examine if routine maintenance of the smoke detectors was part of the alarm companies responsibility. If the detectors were not maintained (i.e. cleaned) at frequent intervals as required by the detector manufacturers, then the fire may have been in the more advanced state at detection. Further in this regard in the response time of the fire department of 9 minutes. Additional time is also spent by the

arriving firefighters (and dependant on the number of first arriving firefighters) advancing hose lines into the building. Flash over of a bedroom during this time is expected and when this occurs, extension of the fire to the next floor via the exterior of the building occurred. Finally, smoke detectors in single family are intended for life safety of its occupants although some property considerations are implicit in their design and operation.